No. 47,236

GENE L. VAUGHN, *Appellant,* v. GARY G. MURRAY, *Appellee,* and
LLOYD L. FEATHERSTON, *Appellee and Cross-Appellant.*

(521 P. 2d 262)

Opinion filed April 6, 1974.

*U. M. Hoover,* of Overland Park, argued the cause and was on the brief for the appellant.

*Fred N. Six,* of Barber, Emerson, Six, Springer & Zinn, of Lawrence, argued the cause, and *Thomas V. Murray,* of the same firm, was with him on the brief for the appellee.

*J. H. Eschmann,* of Ascough, Bausch & Eschmann, of Topeka, argued the cause, and *Gene Riling,* of Riling, Riling & Burkhead, of Lawrence, was with him on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

FROMME, J.: This action was brought by a passenger (Gene L. Vaughn) against the owner-operator of an automobile (Gary G. Murray) and against the owner of a cow (Lloyd L. Featherston). The cow wandered onto a county road during the nighttime and was struck by the automobile. Summary judgment was entered in favor of the owner-operator of the automobile as against the passenger. A motion for summary judgment by the owner of the cow as against the passenger was denied. The passenger appeals from the summary judgment in favor of the driver. The owner of the cow cross-appeals from the order denying summary judgment against the passenger.

The appeal and cross-appeal were pending in this court on January 26, 1974, when the Kansas guest statute, K. S. A. 8-122b, was held unconstitutional and void as a denial of equal protection of the law under the Fourteenth Amendment to the United States Constitution and Sections 1 and 2 of the Kansas Bill of Rights for the reason that the classifications provided in that statute are arbitrary and discriminatory and have no rational basis. See *Henry v. Bauder*, 213 Kan. 751, 518 P. 2d 362 (No. 47,101 opinion filed January 26, 1974).

It will therefore become necessary in the course of this opinion to determine the retroactive effect, if any, to be given the overruling decision of *Henry v. Bauder*, supra, in light of the facts and circumstances of the present case. This action accrued October 8, 1971. The summary judgment appealed was entered March 28, 1973. Notice of appeal was filed April 16, 1973. The overruling decision, *Henry v. Bauder*, supra, was filed January 26, 1974. We will first examine the points raised on the appeal and cross-appeal and then discuss the question of the retroactive-prospective application of the overruling decision.

The appellant contends it was error for the trial court on summary judgment to determine as a matter of law that the owner-operator of the automobile could not be found guilty of gross and wanton negligence. The court's decision was made on the basis of the pleadings and the depositions of the passenger and of the owner-operator, from which the following account of the accident can be fairly deduced.

A wedding and reception were held at a rural church located on county road No. 1029 in Douglas County on the evening of October 8, 1971. The bridegroom was a brother of the driver, Murray, and a friend of the passenger Vaughn. The bride and groom took leave of the festive occasion shortly before 10:00 o'clock p. m. They headed south in the groom's car on county road No. 1029. As usually happens they were vigorously pursued by some of their well-meaning friends. Defendant Murray, brother of the groom, used his car for the pursuit and he was accompanied on the chase by the plaintiff, Vaughn, and several other friends. It was dark when the chase began. The road they traveled was paved, dry, hilly and had a maximum speed limit of 50 miles per hour (mph). Prior to the day of the accident the driver, Murray, had seen cattle on the road in this same area. The passenger Vaughn

had seen cows on this roadway on frequent occasions. The defendant Murray drove his car at speeds between 90 and 100 mph in violation of the posted speed limit in a vain effort to overtake the bride and groom. He crested a hill and saw the car ahead swerve 4 or 5 feet from a straight line of travel. He proceeded with speed unchecked until he saw a cow standing in the roadway 450 yards ahead. Brakes were applied but the car collided with the cow and injuries resulted. At no time during the 2 or 3 mile chase did the passenger Vaughn ask the driver Murray to slow his speed. The occupants of the car were laughing and having a good time until the accident occurred. The parties lived in this neighborhood and were familiar with the road.

The trial court, after reviewing some of our decisions and much of the deposition testimony, stated that the facts were not disputed and, when the facts were taken as true, it could not be reasonably determined that the defendant Murray was guilty of gross and wanton negligence. In further support of the summary judgment the court said that although plaintiff claimed discovery of evidence was not complete he made no suggestion of additional facts tending to support gross and wanton conduct. The driver's motion for summary judgment was sustained.

Although the question is not without difficulty we believe the trial court erred in entering summary judgment.

A summary judgment may be entered if the pleadings, depositions, answers to interrogatories, and admissions on file show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (K. S. A. 60-256 [c].) But in considering a motion for summary judgment the movant's adversary is entitled to the benefit of all reasonable inferences that may be drawn from the facts under consideration. (*Rothwell v. Transmeier*, 206 Kan. 199, Syl. ¶ 3, 477 P. 2d 960.) Normally, the presence or the absence of negligence in any degree is not subject to determination by the court on summary judgment, for such a determination should be left to the trier of the facts. It is only when it can be said that reasonable men cannot reach differing conclusions from the same evidence that the issue may be decided as a question of law. (*Abston v. Medora Grain, Inc.*, 206 Kan. 727, 735, 482 P. 2d 692.) So in the present case if we are to affirm the summary judgment entered by the trial court in favor of the driver we must be able to say on the record before us that

the probability of proving gross and wanton negligence is excluded.

Two things were stressed by the trial court in reaching its decision, the lack of evidence to indicate a willingness to injure plaintiff and that speed alone does not constitute gross and wanton negligence.

Proof of a willingness to injure is not necessary in establishing gross and wanton negligence. This is true because a wanton act is something more than ordinary negligence but it is something less than willful injury. To constitute wantonness the act must indicate a realization of the imminence of danger and a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act. It is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the natural consequences of the actions of the negligent party. (*Saunders v. Shaver,* 190 Kan. 699, 701, 378 P. 2d 70; *Mann v. Good,* 202 Kan. 631, 634, 451 P. 2d 233; *Pickens v. Maxwell,* 203 Kan. 559, 456 P. 2d 4.)

In the case at bar, if one concedes the truth of the statements of fact contained in the depositions, the driver had seen cattle on this particular road in this vicinity on numerous occasions. The trier of fact might reasonably infer therefrom that he knew or should have realized the imminence of danger from the presence of cattle on the roadway and in reckless disregard of probable consequences he proceeded to drive 100 mph at night in violation of a 50 mph maximum speed limit on a "hilly" county road while chasing the bride and groom. In addition it must be conceded he saw the car ahead swerve from its line of travel and should have then known of some peril, which he later encountered. He proceeded some distance thereafter with speed unchecked. At best it would appear from the record that gross and wanton negligence was a question of fact for the jury.

Appellee Murray points to our previous decisions which hold that evidence of speed alone does not constitute gross and wanton negligence (*Polzar v. Raymond,* 189 Kan. 340, 369 P. 2d 373; *Tuminello v. Lawson,* 186 Kan. 721, 352 P. 2d 1057; *Perry v. Schmitt,* 184 Kan. 758, 763, 339 P. 2d 36.) and we adhere to those holdings. However, we believe under the rationale of *Mann v. Good,* supra, and *Pickens v. Maxwell,* supra, sufficient additional causes may have contributed to the collision and were present from which a jury might reasonably have found gross and wanton negli-

gence on the part of the driver. Therefore the summary judgment in favor of the driver Murray was in error and the judgment should be reversed on appeal.

The passenger Vaughn next contends that the guest statute (K. S. A. 8-122b) is unconstitutional and that the statutory requirement of gross and wanton negligence of the operator of the vehicle should not have been applied in the trial court. This issue was not raised in the trial court. It was presented for the first time when appellant filed his brief in this court. A constitutional challenge to a legislative act will not be entertained on appeal to this court unless the challenge has been alleged in the pleadings or presented to the trial court (*Board of County Commissioners v. Brown*, 183 Kan. 19, Syl. ¶ 2, 325 P. 2d 382; *National Van Lines v. Jones*, 192 Kan. 338, Syl. ¶ 1, 388 P. 2d 660.), absent some compelling state interest. (See *State v. Nelson*, 210 Kan. 439, 443, 502 P. 2d 841.) Under the present state of the record appellant's arguments as to the unconstitutionality of the statute cannot be considered by this court in determining the correctness of the trial court's decision.

We turn now to the cross-appeal by Featherston, the owner of the cow, and are confronted with a challenge to his right to be heard. The appellee and cross-appellant (Featherston) seeks to question the order of the trial court which *overruled* his motion for summary judgment. It is contended that an order overruling a motion for summary judgment is not a final decision as required by K. S. A. 60-2102 (*a*), from which an *appeal* may be taken. The contention is sound (see Wright and Miller, Federal Practice and Procedure, Civil, § 2715, p. 416, for federal cases and see also *Kansas State Highway Commission v. Roepke*, 200 Kan. 660, 662, 438 P. 2d 122.) but sound or not this is a false premise upon which to base a challenge to a *cross-appeal*.

In the present case appellant, Vaughn, initiated the *appeal* from a summary judgment entered in favor of appellee Murray. Thus the appellate jurisdiction of this court was properly invoked as required by K. S. A. 60-2102. K. S. A. 60-2102 (*a*) (4) in part provides:

". . . In any appeal or cross-appeal from a final decision, any act or ruling from the beginning of the proceedings shall be reviewable."

The provisions of K. S. A. 60-2103 (*h*) govern the initiation of *cross-appeals*. This latter statute provides:

"When notice of appeal has been served in a case and the appellee desires to have a review of rulings and decisions of which he complains, he shall

within twenty (20) days after the notice of appeal has been served upon him and filed with the clerk of the trial court, give notice of his cross-appeal."

Under both K. S. A. 60-2103 (h) and its predecessor, G. S. 1949, 60-3314, it has been held that a cross-appellee may obtain a review of all rulings adverse to him, interlocutory or otherwise, when such rulings may on remand affect the subsequent course of the proceedings. It is, of course, necessary that a cross-appeal be perfected in order for an appellee to obtain a review of such rulings. (See *Gould v. Robinson,* 181 Kan. 66, 70, 71, 309 P. 2d 405; *Fields v. Anderson Cattle Co.,* 193 Kan. 569, 396 P. 2d 284; *James v. City of Pittsburg,* 195 Kan. 462, Syl. ¶ 1, 407 P. 2d 503; and *Reinecker v. Board of Trustees,* 198 Kan. 715, 722, 426 P. 2d 44.) Both the appeal and cross-appeal were perfected in this case and cross-appellee (Featherston) is entitled to a review of the order overruling his motion for summary judgment.

The claim of the passenger Vaughn against the cross-appellee, Featherston, is based upon simple negligence in permitting his cow to run at large and wander onto a public right-of-way. Cross-appellee, Featherston, contends that appellant, Vaughn, by his own admissions was guilty of contributory negligence as a matter of law in failing to remonstrate or warn the driver. An invitee riding in an automobile driven by the owner at an obviously dangerous speed must exercise ordinary care for his own safety and if he fails to warn the driver, to remonstrate with him or to demand that he be given an opportunity to leave the car, and does not take any precaution for his own safety, cannot recover for the negligent operation of the car by the driver. (*Naglo v. Jones,* 115 Kan. 140, 222 Pac. 116; *Dirks v. Gates,* 182 Kan. 581, 590, 322 P. 2d 750; *Sander v. Union Pacific Rld. Co.,* 205 Kan. 592, 596, 470 P. 2d 748; *Kelty v. Best Cabs, Inc.,* 206 Kan. 654, Syl. ¶ 4, 481 P. 2d 980.)

However, in the present case the vehicle in which Vaughn was a passenger had only traveled two or three miles before the accident. There were several other friends in the automobile and "they were laughing and having a good time". Vaughn did not look at the speedometer to determine how fast they were traveling, although he knew they were "going fast". Conceding as facts those things most favorable to the passenger in this case we cannot conclude as a matter of law he was aware of the obviously dangerous speed. There was no evidence he saw the car ahead swerve. Without awareness of the dangerous speed or of the presence of some danger

ahead we cannot say as a matter of law he was negligent in failing to warn or remonstrate.

As previously pointed out the presence or the absence of negligence is normally not subject to determination on summary judgment but it is a question of fact for the jury. (*Abston v. Medora Grain, Inc.*, supra.) After examining the contention of cross-appellee in light of the record before us we hold the trial court did not err in overruling cross-appellee's motion for summary judgment. This case should therefore be affirmed on cross-appeal.

What has been said disposes of the contentions on both the appeal and cross-appeal but since the summary judgment in favor of the driver is reversed we must remand the case for trial. It therefore becomes necessary to determine the retroactive effect, if any, to be given at the subsequent trial to the overruling decision of *Henry v. Bauder*, supra. In that overruling decision the Kansas "guest statute" (K. S. A. 8-122b) was declared unconstitutional and void. It will not be necessary for our purposes to review that prior decision except to note that it removed the requirement, in causes of action brought by persons who are transported by the owners or operators of motor vehicles as guests, of proving gross and wanton negligence to maintain a cause of action against the driver for injury, death or damage. By reason of the overruling decision a guest in a motor vehicle may now maintain a cause of action based on ordinary negligence.

In the present case the appellant's cause of action accrued, the summary judgment was entered and the challenged judgment was pending on appeal in this court before *Henry v. Bauder*, supra, was handed down. The summary judgment, entered prior to the overruling decision, is now reversed on appeal because of reversible error under the prior law. The case must be remanded for a trial which will occur after January 26, 1974, the date of the overruling decision. The question presented is whether in the trial which follows plaintiff must plead and prove gross and wanton negligence under the law existing when his cause of action accrued or whether he may maintain his cause of action by amending his pleadings and proof to conform to the law as declared in the overruling decision, *Henry v. Bauder*, supra.

Much has been written for law journals on the subject of retroactive-prospective application of overruling decisions by courts. (Schwartz, Retroactivity, Reliability, and Due Process: A Reply to

Professor Mishkin, 33 U. of Chicago L. Rev. 719; Keeton, Creative Continuity in the Law of Torts, 75 Harvard L. Rev. 463; Mishkin, The Supreme Court 1964 Term, Foreword: The High Court, The Great Writ, and the Due Process of Time and Law, 79 Harvard L. Rev. 56; Fairchild, Limitation of New Judge-made Law to Prospective Effect Only: "Prospective Overruling" or "Sunbursting", 51 Marq. L. Rev. 254; Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N. Y. U. L. Rev. 631.) As a matter of constitutional law, it can safely be said, retroactive operation of an overruling decision is neither required nor prohibited. Many of the cases on the subject have been collected in the annotation, Overruling Decision—Application, appearing in 10 A. L. R. 3d 1371-1447.

Courts have given attention to various factors in determining whether or not they should apply an overruling decision retroactively. Some of the factors which have been considered are: (1) Justifiable reliance on the earlier law; (2) The nature and purpose of the overruling decision; (3) *Res judicata;* (4) Vested rights, if any, which may have accrued by reason of the earlier law; and (4) The effect retroactive application may have on the administration of justice in the courts.

The "procedural" and "substantive" aspects of an overruling decision are often so indistinguishable from one another that most of the modern cases make no distinction between the two so far as retroactive or prospective application is concerned. For example see the cases discussed in §§ 12, 13, 22 and 32 of the Annotation, 10 A. L. R. 3d 1420, 1423, 1434 and 1444.

Our overruling decision, *Henry v. Bauder,* supra, had the effect of striking down the "guest statute" (K. S. A. 8-122b) which became effective May 28, 1931. For almost forty-three years litigants, courts and insurance companies felt the impact of the statute upon their rights, duties and liabilities as is apparent by scanning the scores of cases collected in the case annotations in the statute books. The statute was construed and applied to cases coming before the courts. In light of this, the statement found in 16 Am. Jur. 2d, Constitutional Law, § 178, p. 405, appears applicable. It reads:

"The actual existence of a statute prior to a determination that it is unconstitutional is an operative fact and may have consequences which cannot justly be ignored; when a statute which has been in effect for some time is declared unconstitutional, questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly,

and of public policy in the light of the nature both of the statute and of its previous application, demand examination. It has been said that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified."

(See *Chicot County Dist. v. Bank*, 308 U. S. 371, 84 L. Ed. 329, 60 S. Ct. 317.)

In *Gt. Northern Ry. v. Sunburst Co.*, 287 U. S. 358, 77 L. Ed. 360, 53 S. Ct. 145, Mr. Justice Cardozo, speaking for the Supreme Court of the United States, said:

". . . A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating, too broadly [citation omitted], that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted. [citations omitted] On the other hand, it may hold to the ancient dogma that the law declared by its courts had a Platonic or ideal existence before the act of declaration, in which event the discredited declaration will be viewed as if it had never been, and the reconsidered declaration as law from the beginning. [citations omitted] The alternative is the same whether the subject of the new decision is common law [citation omitted] or statute. [citations omitted] The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature. We review not the wisdom of their philosophies, but the legality of their acts. . . ." (pp. 364, 365.)

When a particular action has accrued and the parties have become involved in litigation prior to the time of the announcement of the overruling decision the courts of this nation, after considering the circumstances of the particular case, have determined the future application of the law declared in the overruling decision by various rules. These rules fall into four categories: (1) Purely prospective application where the law declared will not even apply to the parties to the overruling case; (See cases collected 10 A. L. R. 3d, § 7, p. 1393.) (2) Limited retroactive effect where the law declared will govern the rights of the parties to the overruling case but in all other cases will be applied prospectively; (See *Carroll v. Kittle*, 203 Kan. 841, Syl. ¶ 10, 457 P. 2d 21; and cases collected in 10 A. L. R. 3d, § 8 [b], p. 1399.) (3) General retroactive effect governing the rights of the parties to the overruling case and to all pending and future cases unless further litigation is barred by statutes of limitation or jurisdictional rules of appellate procedure; (See cases collected in 10 A. L. R. 3d, § 8 [e], pp. 1407-1412.) and (4) Retroactive

effect governing the rights of the parties to the overruling case and to other cases pending when the overruling case was decided and all future cases, but limited so the new law will not govern the rights of parties to cases terminated by a judgment or verdict before the overruling decision was announced. (See *Hanes v. State*, 196 Kan. 404, 411 P. 2d 643, and cases collected in 10 A. L. R. 3d, § 8 [c, d], pp. 1401-1407.)

We have considered what might be the effect of giving the law declared in the overruling case, *Henry v. Bauder*, supra, general retroactive effect to all pending and future cases without limitation. However, we believe some limitation is necessary because of benefits which flow from giving finality to cases fairly heard and determined. There is trauma and expense to litigants in every trial. The trauma and expense is doubled by requiring a second trial. The outcome of a second trial is never certain. "Guest statute" cases are generally in the liability insurance field and are defended on behalf of insurance companies. Policy holders are reluctant to submit to a second trial. Especially is this true when their cases were fully presented and terminated by the courts under the law in effect when the cases were tried. Trial courts with burdensome dockets are hesitant to undertake a second trial.

In addition the present overruling decision could not have been anticipated and the change in the law came as a surprise to former litigants, lawyers and judges. Unsuccessful litigants looking back can argue they were prejudiced. The Code of Civil Procedure (K. S. A. 60-260) places wide discretion in the hands of the trial courts to set aside judgments upon "any . . . reason justifying relief from the operation of the judgment." The application of this statute could result in confusion. We should not leave this matter to varied future interpretations by trial courts. The uncertainty would surely result in confusion and fruitless relitigation in some cases. We desire to give finality to those cases which have been presented to and determined by the trial courts of this state and the cases have terminated in judgments or verdicts without reversible error under the law then existing.

To give the overruling decision of *Henry v. Bauder*, supra, a limited retroactive effect it becomes necessary to declare a rule to govern the lawyers, litigants and the courts. It is difficult to give birth to a rule without oversight or ambiguity. See *Bielski v. Schulze*, 16 Wis. 2d 1, 114 N. W. 2d 105; *United States F. & G. Co. v. Mil-*

*waukee & S. T. Corp.,* 18 Wis. 2d 1, 117 N. W. 2d 708; and *Alberts v. Rzepiejewski,* 18 Wis. 2d 252, 118 N. W. 2d 172.

The rule of retroactive effect for our present purposes which we believe will best serve the lawyers, litigants and courts of this state is as follows:

The law as declared in the overruling decision of *Henry v. Bauder,* supra, (holding Kansas guest statute unconstitutional) shall be given retroactive application to all similar cases pending in the courts of this state on January 26, 1974, and to cases filed thereafter regardless of when the causes of action accrued with the following exception: When a judgment or a verdict has been entered in a district court prior to January 26, 1974, and the same is free of reversible error under the law then existing, the law as declared in *Henry v. Bauder,* supra, shall not apply unless the constitutional question decided in the overruling decision has been timely presented to the trial court.

As a corollary to this rule limiting the retroactive effect of *Henry v. Bauder,* supra, it follows that if a judgment or verdict entered prior to January 26, 1974, is thereafter set aside on proper motion in the district court or reversed on appeal because of reversible error under the prior law any trial conducted thereafter shall be governed by the law as now declared in the overruling decision, *Henry v. Bauder,* supra.

The claim of Gene L. Vaughn against Gary G. Murray in this case comes within the corollary to the rule announced. The summary judgment, although entered and pending prior to January 26, 1974, is reversed on appeal because of reversible error under the prior law. Since this is true the claim is remanded for trial, trial should be conducted under the law as now declared in the overruling decision and the parties should be permitted to reframe the issues by amendment of pleadings or by pre-trial order.

Accordingly the case is reversed on appeal, affirmed on cross-appeal and remanded with directions to proceed in accordance with the opinions expressed herein.