No. 66,282

REX A. SHARP, KERRY MCQUEEN, JAMES H. MORAIN, and DANIEL
H. DIEPENBROCK, as individuals; NEUBAUER, SHARP, MC-
QUEEN, DREILING & MORAIN, P.A., as a firm; and all OTHER
LAWYERS AS A CLASS REQUIRED BY THE STATE OF KANSAS TO
REPRESENT KANSAS INDIGENT CRIMINAL DEFENDANTS, *Appel-
lants,* v. THE STATE OF KANSAS, *Appellee.*

(827 P.2d 12)

Opinion filed February 28, 1992.

*Rex A. Sharp*, of Neubauer, Sharp, McQueen, Dreiling & Morain, P.A., of Liberal, argued the cause and was on the brief for appellants.

*John W. Campbell*, deputy attorney general, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: Plaintiffs appeal, in what was filed as a class action, from an order of the district court granting summary judgment to the State and dismissing the case. We affirm.

Plaintiffs, lawyers practicing in Liberal, Kansas, brought this suit as a class action for themselves and as representatives of all lawyers who were required to represent indigent criminal defendants in this state prior to July 1, 1988, pursuant to the Indigent Defense Services Act, K.S.A. 22-4501 *et seq.*, and the rules and regulations promulgated thereunder.

On December 15, 1987, the Kansas Supreme Court decided *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P. 2d 816 (1987). *Smith* held that the appointment of attorneys under the indigent defense appointment system as it was then being applied was unconstitutional and granted prospective relief to take effect July 1, 1988. By that date, changes were made in statutory law and in the administrative regulations, and plaintiffs do not attack the system which has been in operation since July 1, 1988.

This is the third action filed by these plaintiffs against the State of Kansas since our decision in *Smith*. On January 4, 1988, suit was filed in the United States District Court for the District of Kansas seeking injunctive relief and monetary damages. That action was subsequently dismissed on 11th Amendment grounds and the dismissal was upheld on appeal. The federal court action has no bearing on the issues in this case and will not be considered further in this opinion.

On March 16, 1988, plaintiffs filed a class action petition against the State of Kansas in the district court of Seward County, Kansas, seeking to recover money damages for legal services rendered under the then-existing court appointment system. The district court granted the State's motion for summary judgment, and plaintiffs appealed. The Kansas Supreme Court affirmed the dismissal of numerous causes of action for damages arising out of the court appointment system held unconstitutional in *Smith*. *Sharp v. State*, 245 Kan. 749, 783 P.2d 343 (1989), *cert. denied* 112 L. Ed. 2d 45 (1990) (hereinafter referred to as *Sharp I*). Two of the issues raised in *Sharp I* were claims for monetary damages based upon the theories of unjust enrichment and inverse condemnation. This court found that plaintiffs had not exhausted their administrative remedies as to the claim for unjust enrichment and affirmed the trial court's dismissal of that alleged claim for damages. The court also found that the inverse condemnation theory had not been raised in the trial court and therefore was not properly before the Supreme Court. However, the court went on to note that even if an inverse condemnation theory had been raised, that theory would not state a valid cause of action.

Plaintiffs brought this action for damages as a class action suit, naming the same plaintiffs as in *Sharp I*, plus an additional party, Daniel H. Diepenbrock. Having exhausted their administrative remedies, plaintiffs renewed their unjust enrichment cause of action and also asserted a cause of action based upon inverse condemnation.

In the trial court the State filed a motion to dismiss on the grounds that *Sharp I* was res judicata to the issues in this case and that plaintiffs' petition based upon claims of inverse condemnation and unjust enrichment failed to state a claim for which relief could be granted. Following briefs and a hearing on the

State's motion, the court adopted both arguments of the State, granted summary judgment to the State, and dismissed plaintiffs' petition.

Plaintiffs have timely appealed, asserting (1) that the district court erred in finding *Sharp I* precluded this action under the theory of res judicata, (2) that the district court erred in holding that the inverse condemnation claim failed to state a claim upon which relief could be granted, and (3) that the court erred in holding that the unjust enrichment claim failed to state a claim upon which relief could be granted.

Before considering the issues raised by the plaintiffs, there is a threshold question raised by our decision in *Smith* which should be addressed and which we find dispositive of the issues herein. In *Smith* the attorney general filed an original action in mandamus to compel Judges Smith and Fromme, of the Fourth Judicial District, to perform duties specified by the Indigent Defense Services Act, K.S.A. 22-4501 *et seq.*, and the rules and regulations promulgated by the State Board of Indigents' Defense Services as published at K.A.R. 105-1-1 *et seq.* The respondent judges had issued orders which allegedly violated the statutes and rules and regulations.

In *Smith*, former Chief Justice Miller, in a lengthy and scholarly opinion, exhaustively reviewed the history of appointed counsel in criminal cases and the constitutionality of the statutory system as it was being administered in Kansas at the time. In a unanimous opinion this court held that the statutory scheme for appointment and payment of counsel for indigent defendants as administered violated both the federal and Kansas Constitutions. In doing so, the court concluded:

"The present system as now operated, we have held, violates certain provisions of the United States and the Kansas Constitutions. Changes are required. These may come about by both legislative and administrative action. The adoption of different bases for computing appointed counsel's compensation, the budgeting and funding of the same, and the possible extension of public defender systems or the adoption of contracts to provide counsel for indigents in some areas, or an intermixture of those and possibly other solutions, takes time. *Meanwhile, the indigent criminal defendants must have counsel, and that is a burden which the bar must continue to shoulder, at least temporarily, under the present system.*

"*. . . Respondents are directed to comply with the present statutes and regulations until July 1, 1988, and to appoint counsel under the present system until that date,* taking care to see that competent counsel are appointed and no unreasonable burden or hardship is placed upon any attorney or attorneys. As we indicated in our temporary order, entered on July 17, 1987, it is the time necessarily spent by an attorney on indigent appointments, and not the number of appointments, which is the important factor in determining reasonableness or unreasonableness, fairness or hardship.

"The requested order of mandamus is denied." 242 Kan. at 383-84.

Does *Smith,* implicitly if not specifically, preclude the present action because our decision that the previous statutory scheme was unconstitutional was not to become effective until July 1, 1988, some five and a half months after the rendering of the opinion? We think so.

Unfortunately, the issue which we now deem to be controlling was not raised in *Sharp I,* although it should have been, and as a result was not considered by this court in reaching its prior decision. The learned trial judge in *Sharp I,* in a short letter opinion, stated:

"The motion for summary judgment is granted.

"The plaintiffs brought this action for damages arising out of an alleged failure by the state to pay them for court appointed attorney services. The plaintiffs stress several theories which they believe entitle them to recover. The real issue here is whether or not the plaintiffs have stated a cause of action upon which relief may be granted. I think not.

"Damages alone do not create a cause of action. A party must present a recognizable cause of action to support their claim. The Kansas Supreme Court has ruled in the case of *State ex rel. Stephan v. Smith,* 242 Kan. 336, that the former method of compensation for appointed counsel violated the equal protection clauses of the U.S. and Kansas Constitutions. The court required the state to comply with existing statutes and regulations until July 1, 1988, and then adopt '. . . different bases for computing appointed counsel's compensation, the budgeting and funding of the same, and the possible extension of public defender systems or the adoption of contracts to provide counsel for indigents in some areas, or an intermixture of those and possibly other solutions . . . .' The court recognized that such action '. . . takes time,' and simply stated that indigent defendants must have counsel, 'and that is a burden which the bar must continue to shoulder, at least temporarily, under the present system.'

"It is clear to me that the Kansas Supreme Court decidedly settled the issue presented by the plaintiffs.

"Accordingly, I am directing summary judgment for the defense. Mr. Campbell is to prepare a Journal Entry for Mr. Sharp's review and approval."

It appears to us that although counsel for the parties in *Sharp I* made numerous constitutional and other arguments, the trial court cut through all of them and actually determined that our opinion in *Smith* controlled and was to be applied prospectively only, beginning July 1, 1988. We conclude the trial court's interpretation of our opinion in *Smith* was correct.

The determination of whether a judicial decision which overrules prior case law or holds statutory law to be unconstitutional should be applied prospectively or retroactively has been the subject of literally hundreds, if not thousands, of cases. It has also been the subject of numerous treatises, articles, and legal encyclopedias. We will not attempt to consider the subject at length, but some basic principles and rules are worthy of repeating.

The guiding principles underlying the prospective-retroactive application of an appellate court's decision are well settled. It has long been recognized that an appellate court has the power to give a decision prospective application without offending constitutional principles. *Carroll v. Kittle*, 203 Kan. 841, 851-52, 457 P.2d 21 (1969). See *Gt. Northern Ry. v. Sunburst Co.*, 287 U.S. 358, 77 L. Ed. 360, 53 S. Ct. 145 (1932); *Vaughn v. Murray*, 214 Kan. 456, 464, 521 P.2d 262 (1974). In *Vaughn*, we said, "As a matter of constitutional law, it can safely be said, retroactive operation of an overruling decision is neither required nor prohibited." 214 Kan. at 464.

In the landmark case of *Henry v. Bauder*, 213 Kan. 751, 518 P.2d 362 (1974), this court held the longstanding Kansas guest statute to be unconstitutional. In addition to striking down the statute, the opinion also overruled prior existing case law. 213 Kan. at 762. However, there was no determination of whether the decision was to be applied retroactively or prospectively. Shortly thereafter, in *Vaughn*, 214 Kan. 456, the court was called upon to determine the retroactive or prospective effect of its earlier holding in *Bauder*.

In considering whether an overruling decision should be applied prospectively or retroactively, this court in *Vaughn* identified four options:

"(1) Purely prospective application where the law declared will not even apply to the parties to the overruling case; (See cases collected 10 A.L.R.3d, § 7, p. 1393.) (2) Limited retroactive effect where the law declared will govern the rights of the parties to the overruling case but in all other cases will be applied prospectively; (See *Carroll v. Kittle,* 203 Kan. 841, Syl. ¶ 10, 457 P.2d 21; and cases collected in 10 A.L.R.3d, § 8[b], p. 1399.) (3) General retroactive effect governing the rights of the parties to the overruling case and to all pending and future cases unless further litigation is barred by statutes of limitation or jurisdictional rules of appellate procedure; (See cases collected in 10 A.L.R.3d, § 8[e], pp. 1407-1412.) and (4) Retroactive effect governing the rights of the parties to the overruling case and to other cases pending when the overruling case was decided and all future cases, but limited so the new law will not govern the rights of parties to cases terminated by a judgment or verdict before the overruling decision was announced. (See *Hanes v. State,* 196 Kan. 404, 411 P.2d 643, and cases collected in 10 A.L.R.3d, § 8 [c, d], pp. 1401-1407.)" 214 Kan. at 465-66.

This court has also noted that "it is clear that the court is free to adopt any of the alternatives set forth in *Vaughn v. Murray,* any combination thereof, or any other rule to establish an effective date of an overruling decision which is fair, just and equitable." *Thome v. City of Newton,* 229 Kan. 375, 379, 624 P.2d 454 (1981).

While it should be noted that the annotation found in 10 A.L.R.3d 1371 was directed to judicial decisions which overruled prior court decisions, the principles set forth therein have generally been applied to decisions holding statutes to be unconstitutional, as this court did in *Vaughn.*

In *Vaughn,* this court recognized five factors commonly relied upon by courts in determining the retroactivity question:

"Some of the factors which have been considered are: (1) Justifiable reliance on the earlier law; (2) The nature and purpose of the overruling decision; (3) *Res judicata*; (4) Vested rights, if any, which may have accrued by reason of the earlier law; and (5) The effect retroactive application may have on the administration of justice in the courts." 214 Kan. at 464.

Although we might have been more specific in our concluding language in *Smith,* we think it is clear that the intent of that decision was that it would only operate prospectively beginning July 1, 1988. In *Smith* we held:

"Respondents are directed to comply with the present statutes and regulations until July 1, 1988, and to appoint counsel under the present system until that date." 242 Kan. at 384.

Assuming, for the sake of argument, that our directions in *Smith* did not clearly and specifically state the decision was only to be applied prospectively, an evaluation of the five factors identified in *Vaughn* would certainly support, if not compel, such a conclusion.

The first factor is whether there was any justifiable reliance on the earlier law which worked to the detriment of the plaintiffs. Certainly the plaintiffs cannot demonstrate any detrimental reliance in performing services under the old system. The historical and time-honored duty of a lawyer to provide pro bono services to the indigent was explored in depth in *Smith* and need not be repeated here. On the other hand, the State of Kansas and the State Board of Indigents' Defense Services had, in good faith, relied upon the statutes and regulations since their inception and had of necessity used general fund tax dollars of the citizens of Kansas in doing so. Such reliance was fully justified not only by the duly enacted statutes but also by the historical precedent which existed prior to the statutes and as recognized in numerous cases, dating back as far as *Case v. Shawnee Co.*, 4 Kan. 511 (1868).

The second factor recognized in *Vaughn* is the nature and purpose of the overruling decision. The announced purpose of the decision in *Smith* was to prevent *future* constitutionally inadequate compensation of attorneys. It was not to create any new rights to additional compensation for services already rendered and paid for under the existing law. This court recognized the seriousness of the situation when it directed the bar of Kansas to continue to furnish services under a system the court found to be constitutionally deficient. That holding does not comport with any intent to create additional retroactive rights and certainly it was never intended that the purpose of the decision was to reach back into the past and provide further compensation for services already rendered.

The third factor is res judicata, and it must be conceded that the principles of that doctrine are not applicable to the *Smith* decision as it relates to the present case.

The fourth factor is the extent to which vested rights, if any, may have accrued by reason of the earlier law. Prior to our

decision in *Smith*, there were no vested rights for attorneys to receive compensation over and above the amounts paid pursuant to the then-existing law.

The final factor from *Vaughn* is the effect that retroactive application might bear on the administration of justice in the courts. While the actual impact would be impossible to predict with any great degree of certainty, it is obvious that extensive litigation and judicial time would be required to determine on a case-by-case basis the extent to which each attorney might have been undercompensated. Even in a class action suit, each claim would have to be given individual attention, and consideration of the numerous variables applicable to each case would result in an intolerable burden upon an already underfunded and understaffed judicial system.

We conclude and, therefore, hold that our decision in *Smith* which found the indigent defense services system then in effect to be unconstitutional as then applied had prospective application only as to services rendered after July 1, 1988. The system as administered prior to that date controlled payment for services rendered prior to July 1, 1988, and plaintiffs have no claim or cause of action for any additional compensation for services rendered prior to such date.

While it is true that the trial court in this case did not base its decision on the issue here determined, it has long been the rule that a trial court decision which reaches the right result will be upheld on appeal even though it is based upon an erroneous reason. *Collins v. Heavener Properties, Inc.*, 245 Kan. 623, Syl. ¶ 2, 783 P.2d 883 (1989); *Prairie State Bank v. Hoefgen*, 245 Kan. 236, Syl. ¶ 3, 777 P.2d 811 (1989).

In view of the decision reached herein, it is not necessary to consider further the arguments of the plaintiffs.

The judgment is affirmed.