**SOUTHWEST FOREST INDUSTRIES, INC., Defendant–Appellant,**

v.

**John L. SUTTON, Plaintiff–Appellee.**

No. 86–1183.

United States Court of Appeals, Tenth Circuit.

Feb. 10, 1989.

Williams R. McKibbon, Jr. (Charles L. House, Gilbert P. Bourk III and Douglas C. Beach, with him on the briefs), of Haynsworth, Baldwin, Miles, Johnson, Greaves and Edwards, Greenville, S.C. for defendant-appellant.

David W. Hauber (Kenneth J. Reilly and Elinor P. Schroeder, with him on the

briefs), of Boddington & Brown, Kansas City, Kan., for plaintiff-appellee.

Before McKAY, SEYMOUR, and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Plaintiff, John L. Sutton, a former employee of defendant Southwest Forest Industries (Southwest), brought this diversity action for damages, alleging retaliatory discharge for filing worker's compensation claims. After a jury verdict for Sutton, the district court, 643 F.Supp. 662, denied Southwest's motion for judgment notwithstanding the verdict and Southwest appealed. While this appeal was pending, the Kansas Supreme Court issued several decisions addressing whether an employee covered by a collective bargaining agreement could bring a tort action for retaliatory discharge. Among other issues, Southwest asks us to hold that the latest Kansas decision, which reversed prior decisions on which Southwest relied, should not be applied retroactively in this appeal. We conclude instead that the most recent Kansas decision on this issue should be applied retroactively here. We are not persuaded by Southwest's other contentions, and we therefore affirm.

## I.

Sutton was employed by Southwest from September 1978 until July 1982. He initially brought this action in Kansas state court, claiming that Southwest discharged him in retaliation for having filed worker's compensation claims. The action was subsequently removed to the United States District Court for the District of Kansas and a jury trial was held in October 1985. At the time of trial, only the Kansas Court of Appeals had ruled on the existence of an action in tort for retaliatory discharge. See Murphy v. City of Topeka—Shawnee County Department of Labor Services, 6 Kan.App. 2d 488, 630 P.2d 186 (1981). The court held there that Kansas law permits an employee to bring a cause of action in tort for a termination based on the filing of worker's compensation claims. Id. 630 P.2d at 193. The plaintiff in Murphy was an employee-at-will. Id. 630 P.2d at 190. Southwest argued unsuccessfully to the district court that Murphy was inapplicable to the present case because Sutton was covered by a collective bargaining agreement.

The jury returned a verdict for Sutton, awarding him $250,000 in actual damages and $1,000,000 in punitive damages. Southwest appealed the judgment to this court in January 1986. During the pendency of this appeal, the Kansas Supreme Court issued decisions supporting Southwest's argument that a tort action for retaliatory discharge was not available to employees covered by collective bargaining agreements. See Cox v. United Technologies, Essex Group, Inc., 240 Kan. 95, 727 P.2d 456, 459 (1986); Smith v. United Technologies, Essex Group, Inc., 240 Kan. 562, 731 P.2d 871, 880 (1987). Southwest filed a motion for summary reversal of the district court judgment, urging that the Cox and Smith decisions governed the present appeal. In response, Sutton argued that the application of those cases by this court would violate his constitutional rights. This court rejected these constitutional claims and granted Southwest's motion for summary reversal on February 12, 1987, remanding the action to the district court with instructions to dismiss. Pursuant to this court's mandate, the district court dismissed the action on February 23, 1987.

Sutton timely filed a petition for rehearing with suggestion for rehearing en banc with this court, again claiming that application of Cox and Smith would violate his constitutional rights. While this petition for en banc review was pending, the Kansas Supreme Court agreed to review similar constitutional challenges to its Cox and Smith decisions in an unrelated case. See Armstrong v. Goldblatt Tool Co., 242 Kan. 164, 747 P.2d 119 (1987). We granted Sutton's petition to stay further proceedings in this action until the Kansas Supreme Court addressed the constitutional challenges to Cox and Smith raised in Armstrong.

In Armstrong, decided on December 11, 1987, the Kansas Supreme Court rejected

the plaintiff's claims that application of *Cox* and *Smith* violated her constitutional rights. *Id.* 747 P.2d at 123–25. The court reiterated its previous holding that while a tort action for retaliatory discharge was available to employees-at-will, it was not available to employees covered by collective bargaining agreements. *Id.* 747 P.2d at 122. On the basis of the *Armstrong* decision, Southwest filed a motion to dissolve the stay of these proceedings, which we granted on January 22, 1988. That same day, the Kansas Supreme Court denied a motion for rehearing in *Armstrong.* On February 22, 1988, we denied Sutton's petition for rehearing and rehearing en banc.

Thirty-two days later, the Kansas Supreme Court reversed the position it had taken in the *Cox, Smith,* and *Armstrong* decisions. On March 25, 1988, the Kansas court held in *Coleman v. Safeway Stores, Inc.,* 242 Kan. 804, 752 P.2d 645, 646 (1988), that a tort action for retaliatory discharge is available to employees covered by collective bargaining agreements. Based upon the change in Kansas law announced in *Coleman,* Sutton filed a motion to recall the mandate and reinstate the appeal. We granted that motion.

The primary issue before us now is whether to apply *Coleman* retroactively in this appeal. In addition, Southwest raises issues concerning the conduct of the trial and the type and amount of damages awarded.

## II.

■ As a court sitting in diversity, we must apply a state supreme court's most recent statement of state law. *Robinson v. Volkswagen of America, Inc.,* 803 F.2d 572, 574 (10th Cir.1986). *Coleman* is the most recent statement by the Kansas Supreme Court concerning that state's law on the existence of a tort action for retaliatory discharge. Our task therefore is to predict whether the Kansas Supreme Court would apply *Coleman* retroactively. *See Daitom, Inc. v. Pennwalt Corp.,* 741 F.2d 1569, 1574 (10th Cir.1984).

The Kansas Supreme Court provided no obvious indication in *Coleman* whether it intended that decision to be applied retroactively. Because *Coleman* does not expressly require retroactive application beyond that case, we must examine Kansas law for further guidance. The leading Kansas decision holds that retroactive application of an overruling decision is neither required nor prohibited as a matter of constitutional law. *Vaughn v. Murray,* 214 Kan. 456, 521 P.2d 262, 269 (1974). In *Vaughn,* the Kansas Supreme Court cited with approval certain factors used by courts in determining whether to apply such a decision retroactively. These factors include: "(1) Justifiable reliance on the earlier law; (2) The nature and purpose of the overruling decision; (3) *Res judicata;* (4) Vested rights, if any, which may have accrued by reason of the earlier law; and (5) The effect retroactive application may have on the administration of justice in the courts." *Id.*

■ Applying these factors to the present appeal, we conclude that none of them preclude a retroactive application of *Coleman.* Southwest argues that a tort action for retaliatory discharge did not become available to employees subject to a collective bargaining agreement until the date of the *Coleman* decision, and thus *Coleman* should be restricted to prospective application. Southwest essentially claims that it justifiably relied on the law existing at the time it discharged Sutton. We are not persuaded.

Southwest's argument presumes that a tort action for retaliatory discharge did not exist at the time of Sutton's discharge. We disagree with this presumption, because we read *Murphy's* discussion of the public policy rationale underlying such causes of action as sufficiently broad to have provided Southwest with notice of a potential claim when it discharged Sutton over a year after *Murphy* was decided. Our view is supported by *Coleman's* reliance on the public policy rationale set forth in *Murphy.* In finding that this rationale should not be restricted to employees-at-will, the Kansas Supreme Court not-

ed that "[a]lthough the employee in *Murphy* was an at-will employee, the primary emphasis of the opinion was on the strong public policy of Kansas underlying the Worker's Compensation Act, applicable to all workers injured on the job." *Coleman*, 752 P.2d at 649. Moreover, Southwest could not have relied on the holdings of *Cox, Smith*, and *Armstrong*, because these decisions were not announced until over one year after judgment was entered against it by the district court. Finally, the *Cox* line of decisions never sanctioned an employer's retaliatory discharge of an employee for filing worker's compensation claims. *Cf. Ebert v. Ebert*, 232 Kan. 502, 656 P.2d 766, 768 (1983) (Kansas decision overruling interspousal immunity doctrine only added possible civil liability in damages, and did not create criminal culpability for batteries committed upon a spouse, which were always unlawful).

Southwest also asserts that collective bargaining agreements have long provided covered employees with remedies protecting them from retaliatory discharge, and that these remedies adequately protected the public policy concerns identified by *Coleman* in cases pending at the time of *Coleman's* issuance. This argument ignores the Kansas Supreme Court's reasons for overruling its previous decisions in *Cox, Smith*, and *Armstrong*. The court found it a "disturbing proposition" that an employee subject to a collective bargaining agreement must surrender tort remedies which were not considered in the bargaining process or intended to be part of that agreement. *Coleman*, 752 P.2d at 651. The court also noted that denial of a cause of action for retaliatory discharge to employees subject to collective bargaining agreements in effect immunizes employers with such contracts from "accountability for violations of state public policy." *Id.* The Kansas Supreme Court expressly recognized that the grievance and arbitration remedies afforded an employee under a union contract are inadequate when his discharge contravenes state public policies. *Id.* The court admitted that its *Cox* line of decisions had not considered such inadequacies, nor considered the emphasis in collec-

tive bargaining agreements upon the collective good rather than the individual employee's welfare. *Id.* 752 P.2d at 651–52.

Finally, we find significant the fact that the Kansas Supreme Court did not limit the cause of action announced in *Murphy* and *Coleman* to a prospective application. Plaintiffs Murphy and Coleman were allowed to assert their claims in remanded proceedings before the trial courts.

Nor does Southwest's argument comport with the court's purpose in overruling *Cox, Smith*, and *Armstrong*, which was to erase the distinction made in those decisions between at-will and contractual employees discharged in violation of a state public policy. If we were to deny Sutton the benefit of that policy, we would perpetuate the same harms decried by the Kansas Supreme Court in *Coleman*.

Finally, turning to the third and fifth *Vaughn* factors, Southwest contends that a retroactive application of *Coleman* would contravene principles of res judicata and open the floodgates to relitigation of decisions based on *Cox*. However, Southwest's argument that a final decision has already issued in this appeal is flawed. Southwest ignores our order of May 10, 1988, which reinstated the appeal. In that order, we noted that Sutton's time to petition for certiorari had not elapsed so that a final judgment was not yet in effect. *See Linkletter v. Walker*, 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 1734 n. 5, 14 L.Ed.2d 601 (1965) (judgment not final until time for petition of certiorari has elapsed). Because a final judgment has not yet taken effect, our reconsideration of this appeal does not infringe upon res judicata principles. Similarly, the absence of a final judgment here also distinguishes this appeal from those cases relying upon *Cox, Smith*, and *Armstrong* in which a final judgment has issued.

Our application of *Coleman* in this appeal is warranted under the decisions in *Murphy, Coleman*, and *Vaughn*. We thus hold that Sutton has a claim for retaliatory discharge under Kansas law.

## III.

Southwest raises a number of issues regarding the conduct of the trial. First, Southwest contests several evidentiary rulings. Under the Federal Rules of Civil Procedure and Federal Rules of Evidence, we may not overturn a jury verdict for an error in the admission or exclusion of evidence "unless a substantial right of the party is affected." Fed.R.Evid. 103(a); Fed.R.Civ.P. 61; *see also Beacham v. Lee-Norse*, 714 F.2d 1010, 1014 (10th Cir.1983). We have reviewed the entire record, and we are not persuaded that any of the contested evidentiary rulings affected Southwest's substantial rights.

Southwest also argues that the trial court failed to properly instruct the jury. We are unable to review this contention because Southwest failed to designate the instructions as part of the record. *See Neu v. Grant*, 548 F.2d 281, 286 (10th Cir.1977) ( "Matters not appearing in the record will not be considered by the court of appeals." ); *see also Sanabria v. International Longshoremen's Ass'n Local 1575*, 597 F.2d 312, 313 (1st Cir.1974); *cf. United States v. Hart*, 729 F.2d 662 (10th Cir. 1984). Finally, we view as frivolous Southwest's argument that there was insufficient evidence to create a jury issue on retaliatory discharge.

## IV.

◼ Southwest also fails to persuade us that the award of actual damages was excessive. Sutton's expert testified that his economic loss amounted to approximately $150,000. While Southwest presented contrary evidence, it was the jury's task to sort out the conflicts. Moreover, Kansas allows damages for emotional distress in the absence of physical injury "if such distress is caused by intentional or reckless outrageous conduct." *Lantz v. City of Lawrence*, 232 Kan. 492, 657 P.2d 539, 545 (1983). *See also Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112, 118–19 (1984). The district court held that Kansas would permit such damages in an action establishing that an employee was discharged for exercising his rights under the Workmen's Compensation Act. We have no reason to disagree with that conclusion. Sutton presented ample evidence of the emotional distress caused by his termination, including the humiliation of being falsely accused of lying on his employment application and having to see his wife clean houses to support them when he could not obtain other employment. This facet of the damage award, which is difficult to quantify, undermines Southwest's argument that the award of $250,000 actual damages was excessive.

◼ Southwest also challenges the jury's award of punitive damages. Its main argument proceeds from the same premise as its other arguments on retroactivity: that a cause of action for retaliatory discharge for employees subject to a collective bargaining agreement was not established until *Coleman*. Southwest points to *Murphy*'s refusal to allow the employee-at-will there to claim punitive damages on a cause of action for retaliatory discharge just announced in that decision. *Murphy*, 630 P.2d at 193 ( "[I]nasmuch as this is the first recognition of such a cause by a Kansas court of appellate jurisdiction, we believe the allowance of punitive damages in this case would be extremely unjust." ). Southwest contends that *Coleman*'s extension of that same cause of action to contractual employees should likewise preclude an award of punitive damages in cases pending, or decided prior to, *Coleman*. We do not agree with this argument. *Murphy* provided Southwest with sufficient notice of the potential for an award of punitive damages well over a year before Sutton was discharged.

Southwest argues that the evidence in this case does not meet the requisites for an award of punitive damages. We recently addressed a similar issue under Kansas law in *O'Gilvie v. International Playtex, Inc.*, 821 F.2d 1438, 1446 (10th Cir.1987):

"Punitive damages are imposed under Kansas law for 'a willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs.' [*Wooderson v. Ortho Pharmaceutical*

*Corp.*, 235 Kan. 387, 681 P.2d 1038, 1061] (quoting *Cantrell v. Amarillo Hardware Co.*, 226 Kan. 681, 686, 602 P.2d 1326, 1331 (1979)).

'In assessing punitive damages the nature, extent, and enormity of the wrong, the intent of the party committing it, and all circumstances attending the transaction involved should be considered. Any mitigating circumstances which may bear upon any of the above factors may be considered to reduce such damages.'

*Id.* (quoting *Henderson v. Hassur*, 225 Kan. 678, 594 P.2d 650, 663 (1979))."

Sutton presented evidence that Southwest was "grossly negligent or recklessly indifferent to the rights of others," *Wooderson*, 681 P.2d at 1062, when it fired him for falsifying his employment application notwithstanding Southwest's own records showing the application was not falsified. Sutton also presented evidence that Southwest continued to oppose his unemployment compensation claim and persisted in calling him a liar after learning that the accusation of lying on his employment application was false. Under these circumstances, we believe Sutton made out a claim for punitive damages under Kansas law.

▮ Finally, Southwest claims that the punitive damages award of $1,000,000 is excessive. We also addressed this issue in *O'Gilvie*, where we noted that under Kansas law, " '[i]n fixing an award of punitive damages a jury may consider the amount of actual damages recovered, defendant's financial condition and probable litigation expenses.' " 821 F.2d at 1447 (quoting *Binyon v. Nesseth*, 231 Kan. 381, 646 P.2d 1043, 1047 (1982)). In *Malandris v. Merrill Lynch, Pierce, Fenner & Smith*, 703 F.2d 1152, 1168 (10th Cir.1981), *cert. denied*, 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983), we held that

"absent an award so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the damages is considered inviolate."

We have reviewed the record, and our judicial consciences are not shocked by the size of the award in this case.

The district court opinion is affirmed in all respects.