**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 16, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

ELIZABETH SHIELDS,

    Plaintiff - Appellant,

v.

PROFESSIONAL BUREAU OF
COLLECTIONS OF MARYLAND, INC.,

    Defendant - Appellee.

No. 22-3006

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:20-CV-02205-HLT-GEB)**
_____

Russell S. Thompson, IV, Thompson Consumer Law Group, PC, Scottsdale, Arizona, for
Plaintiff-Appellant.

Joshua C. Dickinson (Kersten L. Holzhueter with him on the brief), Spencer Fane LLP,
Kansas City, Missouri, for Defendant-Appellee.
_____

Before **TYMKOVICH**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

**TYMKOVICH**, Circuit Judge.
_____

    Professional Bureau of Collections of Maryland, Inc. sent three collection

letters to Elizabeth Shields over outstanding student loan debt.  It used an outside

mailer to send the letters.  The letters did not indicate the debt balance could increase

due to interest and fees from the date of the letters. Shields sued, alleging the disclosure of her debt and the misleading letters violated the Fair Debt Collection Practices Act (FDCPA).

The district court dismissed because it found Shields lacked a concrete injury necessary for standing. We affirm. Shields did not allege that Professional Bureau's use of a mailer and the content of its letters sufficiently harmed her.

## I. Background

Shields has significant outstanding student loan debt. In July 2019, Professional Bureau sent her a collection letter that listed the assigned balance as $184,580.73 and the debt balance as $217,657.60 without explaining the difference or that the debt could increase due to interest, fees, and other charges. In early August, Professional Bureau sent a second letter with the same debt balance. It later sent a third letter with a debt balance of $218,727.01 without explaining the increase. Professional Bureau used an outside mailer to compose and send the letters.

Shields sued under the FDCPA. She alleged Professional Bureau violated 15 U.S.C. § 1692c(b) by communicating her debt to the mailer and violated § 1692e(2)(A), (10) and § 1692g(a)(1) by misrepresenting her debt. Professional Bureau moved to dismiss, alleging Shields lacked standing because she lacked a concrete injury. Shields responded and included a declaration of additional facts to show her injuries. The district court treated Professional Bureau's motion as a facial challenge to subject matter jurisdiction, declined to consider the

declaration, and dismissed Shields's complaint without prejudice because she lacked standing.  It later rejected Shields's requests to reopen the case, reconsider dismissal, and allow an amended complaint.

## II.  Analysis

Shields asserts she has standing because she suffered both concrete tangible and intangible injuries.  And she claims the district court erroneously rejected her efforts to reopen the case and allow her to file an amended complaint.

### A. Standing

The FDCPA limits how debt collectors can pursue certain types of debt and creates a private right of action when they violate those limitations.  *See Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1067 (10th Cir. 2022).  But to invoke that right, "a violation of a legal entitlement alone is insufficient."  *Laufer v. Looper*, 22 F.4th 871, 878 (10th Cir. 2022).  Article III of the Constitution requires a plaintiff have standing to sue, meaning she has incurred (or will incur) (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  The injury must be concrete—real, not abstract—and can be either tangible (*e.g.*, physical) or intangible (*e.g.*, reputational).  *Id.* at 340.  We determine "standing on a claim-by-claim basis."  *Santa Fe All. for Pub. Health and Safety v. City of Santa Fe*, 993 F.3d 802, 813 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 1228

(2022).  Although a district court has discretion in how it resolves standing challenges under Rule 12(b)(1), *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002), we review its ultimate decision de novo, *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020).

Tangible harms in the FDCPA context include familiar injuries like detrimental reliance on a collection letter that misrepresents debt.  An intangible harm might occur if a collector used billboards to publicly shame a private citizen into paying his debt.  When considering "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo*, 578 U.S. at 340.  "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'"  *Id.* at 341 (alteration in *Spokeo*) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)).  But the central question is "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).  The harms must be similar "in kind, not degree." *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021) (internal quotation marks omitted). Because an "exact duplicate" is unnecessary, *TransUnion*, 141 S. Ct. at 2204, a plaintiff may have standing for a statutory claim even if she could not succeed on the traditional tort, *Lupia*, 8 F.4th at 1192.

Shields alleges Professional Bureau injured her in two ways: by disclosing her debt and sending misleading letters.  We conclude neither caused a concrete injury.

### 1. Disclosure

The FDCPA generally prohibits debt collectors from communicating, "in connection with the collection of any debt, with any person" without the consumer's consent or court permission.  § 1692c(b).[1]  There are, however, a few exceptions, such as the consumer, the consumer's attorney, and the collector's attorney.  *Id.*  Outside mailers are not one of the enumerated exceptions.

Shields asserts Professional Bureau's disclosure violated the FDCPA and injured her.  Here, like below, she primarily relies on a close relationship with the traditional tort of public disclosure of private facts.  That tort occurs when a tortfeasor gives "publicity to a matter concerning the private life of another" and "the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."

---

[1]  In relevant part, the statute says,

> [W]ithout the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Restatement (Second) of Torts § 652D (Am. L. Inst. 1977). "Publicity" means the information is conveyed "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* cmt. a.

The Eleventh Circuit recently rejected a similar argument in *Hunstein v. Preferred Collection and Management Services, Inc.* (*Hunstein III*), 48 F.4th 1236, 1240 (11th Cir. 2022) (en banc). There, the plaintiff sued after a debt collector used an outside mailer to send a collection letter. *Id.* A panel twice found he had standing. *Hunstein I*, 994 F.3d 1341, 1348–49 (11th Cir. 2021) (pre-*TransUnion*); *Hunstein II*, 17 F.4th 1016, 1027 (11th Cir. 2021) (post-*TransUnion*). But the en banc court concluded otherwise because the plaintiff failed to allege publicity and "without publicity, there is no invasion of privacy." *Hunstein III*, 48 F.4th at 1245. This means that without publicity, there is "no harm, at least not one that is at all similar to that suffered after a public disclosure." *Id.* The Eleventh Circuit observed the difference between private and public disclosure "is qualitative, not quantitative." *Id.* at 1249.

Like Hunstein, Shields failed to allege anything close to the required publicity element. She only alleged Professional Bureau disclosed her debt to its outside mailer—certainly not the public at large nor someone likely to widely communicate her debt. Shields did not have to plead and prove the tort's elements to prevail. But to proceed, she had to at least allege a similar harm. For example, we recently found a plaintiff who received one improper call about her

6

alleged debt could pursue an FDCPA claim because her harm was analogous to the tort of intrusion upon seclusion. *Lupia*, 8 F.4th at 1191–92. Although a single call may have been insufficient for traditional tort liability, it was still the same kind of harm, *i.e.*, an intrusion into her privacy. *Id.* at 1192.

But here, Shields's alleged harm was that one private entity (and, presumably, some of its employees) knew of her debt. That is not the same kind of harm as *public* disclosure of private facts, which is concerned with highly offensive information being widely known. *See* Restatement, *supra*, § 652D cmt. a ("[I]t is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons."). Like Hunstein, Shields alleged private—not public—disclosure.

Beyond public disclosure, Shields briefly tries to link the statutory violation to intrusion upon seclusion. But she never alleged Professional Bureau intruded her "private solitude." *Cf. Lupia*, 8 F.4th at 1191. She throws out other torts, like defamation, but fails to explain their relevance. *See DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 967 (10th Cir. 2017) (declining to consider inadequately briefed arguments). In short, Shields did not suffer a concrete injury when Professional Bureau used the outside mailer.

### 2.  *Substance of the Letters*

The FDCPA also regulates how collectors communicate with consumers. Collectors may not falsely represent "the character, amount, or legal status of any

debt," § 1692e(2)(A), or use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," § 1692e(10). And "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless . . . contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the amount of the debt." § 1692g(a)(1). Shields alleges Professional Bureau violated these provisions by not truthfully informing her about her debt balance and that the balance could increase.

When Shields responded to Professional Bureau's dismissal motion, she attached a declaration of facts to show the letters caused, among other injuries, detrimental reliance. The district court declined to consider the declaration because Professional Bureau facially challenged subject matter jurisdiction. A facial challenge "assumes the allegations in the complaint are true and argues they fail to establish jurisdiction," while a factual challenge "goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Baker*, 979 F.3d at 872.

Professional Bureau did not provide evidence outside the pleadings. By contrast, Shields tried to use the declaration to bolster her complaint and defeat the facial challenge. *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022). The district court did not abuse its discretion by not considering her declaration. *See id.*

8

Confined to her complaint, Shields pleaded only that the letters were generally prejudicial to consumers and caused her to be confused and believe her debt was not accruing interest. But she never alleged the letters caused her to *do* anything. Her confusion and misunderstanding are insufficient to confer standing. *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022). And it would be unreasonable for a debtor in Shields's position to believe that her debt would not continue to accrue interest, absent a well-pleaded allegation to the contrary.

As a last attempt, Shields tries to link her alleged harms to common-law fraud. But fraud recognizes that harm may flow from relying on a misrepresentation, and Shields never pleaded reliance. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 998 (11th Cir. 2020). In other words, she did not allege the same kind of harm as required by the tort of fraud.

In sum, Shields did not plead any concrete tangible or intangible harms.

### B. Post-Judgment Motions

We review a district court's rulings on Rule 59(e) and Rule 60(b)(6) motions and requests for leave to amend a complaint for an abuse of discretion. *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019); *Kile v. United States*, 915 F.3d 682, 688 (10th Cir. 2019); *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1117 (10th Cir. 2009).

After the district court dismissed the case and entered judgment, Shields requested the court reopen the case, reconsider dismissal, and allow her to file an

amended complaint with the allegations contained in her declaration. She asserts she was entitled to relief because the Supreme Court issued *TransUnion*, the Eleventh Circuit issued *Hunstein II*, and she must pay to refile. Her arguments are unavailing.

A party may move "to alter or amend a judgment." Fed. R. Civ. P. 59(e). Such relief may be warranted because of "an intervening change in the controlling law" or "the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The court may also relieve a party from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Because Rule 60(b)(6) is "a grand reservoir of equitable power to do justice in a particular case," a court may grant relief "only in extraordinary circumstances and only when necessary to accomplish justice." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996) (internal quotation marks omitted).

First, assuming *TransUnion* changed the law of standing rather than explained *Spokeo*, it was not an intervening change. The Supreme Court issued its opinion before Shields responded to Professional Bureau's motion. The district court even gave her additional time to respond because of *TransUnion*.

Second, after the district court dismissed Shields's complaint, the Eleventh Circuit issued *Hunstein II*, which found the plaintiff had standing. Obviously, this Eleventh Circuit case was not controlling (and not a change—it confirmed *Hunstein I*).

Third, Shields asserts the court should have reopened the case because she must pay filing and service fees to refile. But she had the burden to establish standing, so she bears the cost of her deficient pleading. *Lujan*, 504 U.S. at 560–61. It is not manifestly unjust nor an extraordinary circumstance that she must pay to refile.

The district court did not abuse its discretion by denying Shields's request to reopen the case and reconsider dismissal. And because it did not reopen the case, it properly declined to allow an amended complaint. *See Combs v. PriceWaterhouseCoopers LLP*, 382 F.3d 1196, 1205 (10th Cir. 2004).

## III. Conclusion

For the foregoing reasons, we affirm.